UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LISA LIBERI and BRENT LIBERI,

    Plaintiffs,

v.                                                                           4:14cv416-WS

IRBSEARCH, LLC,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

    Lisa and Brent Liberi (collectively, "Plaintiffs") have sued IRBsearch, LLC ("IRB"), alleging that IRB improperly obtained and disclosed personal information from their motor vehicle records in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721–25.  Before the court at this time is IRB's motion for summary judgment.  Doc. 169.  Plaintiffs have responded (doc. 184) in opposition to the motion, and the parties have been advised (doc. 206) that the motion would be taken under advisement as of a date certain.

# I.  BACKGROUND

## A.

IRB is a data reseller.  At all times relevant to this case, IRB obtained its data—pursuant to a contract (doc. 197, Ex. 21)—from an entity now known as LexisNexis Risk Data Management, Inc. ("LRD").  In 2009, under a different name, LRD operated an "Accurint" database that compiled information about individuals and businesses from a large number of sources, including motor vehicle records.  By its terms, this IRB/LRD contract required IRB to resell Accurint reports only to process servers and private investigators, bail bondsmen, physical asset recovery companies, and judgment collection companies.

When deposed, IRB's CEO Tony Del Vecchio explained that, in 2009, IRB did not itself compile data but, instead, provided "subscriptions or access to [the Accurint] platform."  Doc. 189, Ex. 11.  According to Del Vecchio, IRB acted as a gateway allowing its customers to log directly onto the Accurint system.  With such access, the customer could conduct a "person search" by entering information known to the customer, such as name, address, or social security number.  An Accurint "person search" retrieved all files matching the criteria entered by the customer.  Del Vecchio asserted that IRB did not add any information to, or subtract any information from, the Accurint product.

Because some of the information contained in the Accurint reports was "personal information" as defined in the DPPA, the IRB/LRD contract contained the following provision:

> Reseller shall not obtain, provide, or use DPPA Data through the [LRD] Services in any manner that would violate the DPPA. Reseller agrees to obtain permissible use certification from Reseller's Customers, and to provide them such DPPA Data solely in accordance with the permissible use(s) Reseller's Customer certifies.

The DPPA lists fourteen "permissible uses," one of which is "[f]or use by any licensed investigative agency or licensed security agency for any purpose permitted under this subsection."  18 U.S.C. § 2721(b)(8).

In 2007, Todd Sankey, on behalf of the Sankey Private Investigation Firm, entered into a Public Record Products Agreement with IRB.  Doc. 189, E. 12.  That Agreement (1) granted the Sankey Firm a restricted license to use IRBsearch Services—i.e., the gateway to LRD Services—"solely for the Sankey Firm's own internal business purposes" and (2) prohibited the Sankey Firm from using "any information contained in IRBsearch Services for a purpose not specified by Customer or otherwise authorized in this Agreement."  In Section E of the Agreement, entitled "DPPA Permissible Uses," Todd Sankey certified that his Firm would use "personal information" obtained from IRB for one or more of three "permissible uses"—namely, for use (1) "[i]n connection with any proceeding

(including arbitration) in any court or government agency, or before any self-regulatory body, including investigation in anticipation of litigation"; (2) "[t]o verify the accuracy of information about a person who provided the information to you (or to your client) but only if used to recover on a debt against the person or to pursue legal remedies against the person for fraud"; and (3) "by an insurer (or its agent) in connection with claims investigation activities, antifraud activities, rating or underwriting."  All three of the uses certified by Todd Sankey are among the DPPA's fourteen permissible uses.

In 2009, through the Sankey Firm's IRB account, Neil Sankey conducted multiple person searches on Lisa and Brent Liberi, among others.  Like his son Todd, Neil Sankey is a private investigator.  The record does not reveal whether Neil Sankey did or did not disclose the purpose of these particular searches when made.

LRD maintains a record of all searches, including searches run through resellers such as IRB.  LRD's records reveal that the user ID assigned to Neil Sankey and sold to the Sankey Firm was used to conduct searches as follows:

> (a) last name = Liberi and first name = Lisa, Brent (husband) or Vincent (unknown).  The search types were: Person, Business, Court, Civil, Criminal, Marriage & Divorce, and Comprehensive Person.  The searches were run on March 16, 2009; April 6, 2009; April 15, 2009; April 19, 2009; and May 7, 2009.

Case 4:14-cv-00416-WS-CAS   Document 209   Filed 12/04/15   Page 5 of 18

Page 5 of 18

The IRB account held by the Sankey Firm did not permit retrieval of full social security numbers, and none of the Accurint reports obtained by Neil Sankey included full social security numbers for either of the Plaintiffs.

While the Accurint reports obtained by Sankey did not reveal Plaintiffs' full social security numbers, the reports did reveal their home address on "Plaza Blanca" in New Mexico.[1]  According to Lisa Liberi, that address was unpublished, having been disclosed *only* to New Mexico's Department of Motor Vehicles and to close family and friends.  Plaintiffs otherwise used a substitute mailing address on all documents—including tax forms, motor vehicle registrations, social security records, and driver's licenses.  They were permitted to use a substitute address on all such documents based on Lisa Liberi's acceptance into California's *Safe at Home* program on May 14, 2002.  The *Safe at Home* program allows survivors of domestic violence and/or stalking to use a "new substitute PO Box mailing address when creating government and public documents."  Lisa's husband, Brent Liberi, and her son by a former marriage were also enrolled in the *Safe at Home* program

---

[1] Plaintiffs lived at the Plaza Blanca address from November 2006 to November 2012.  Although the Accurint Reports obtained by Neil Sankey suggest that Sankey himself entered Plaintiffs' Plaza Blanca address as a search term when he conducted his first IRB search on March 16, 2009, the court assumes—for purposes of the motion for summary judgment only—that the Plaza Blanca address was "obtained" by Sankey from the Accurint Reports.

and used the substitute address after May 14, 2002.

In November 2008, Lisa Liberi was interning as a paralegal for Philip Berg, a lawyer and former plaintiff in this action.  Orly Taitz, also an attorney, was then active with Berg in what is commonly referred to as the "Birther" movement.  According to Plaintiffs, Taitz went on a "public crusade" against Lisa Liberi and Berg after they refused to write a legal brief on Taitz's behalf and—to that end—asked Neil Sankey "to do research on Plaintiffs and Mr. Berg in order to harass them."  Taitz thereafter published Plaintiffs' private Plaza Blanca address—presumably obtained from Neil Sankey—on her website and "all over the internet," allegedly causing harm to Plaintiffs.

Plaintiffs do not contend that the State of New Mexico, through its Motor Vehicle Division ("NMMVD"), sold, or otherwise provided, information from its motor vehicle records to either IRB or LRD.  Plaintiffs have instead alleged that, "prior to March 15, 2009, the State of New Mexico had valid contracts with companies . . . allowing those companies to [disclose] motor vehicle information to persons or entities with DPPA permitted Purposes."  Doc. 199, ¶ 108.  Indeed, in 2005, ChoicePoint Services, Inc., a data aggregation company, entered into such a contract with NMMVD.  ChoicePoint's contract provided that (1) ChoicePoint "may disclose information on the MVD Database only to persons or entities for the

purposes permitted under [state law] and the DPPA"; (2) ChoicePoint shall implement an automatic audit trail that tracks each distribution of personal information, including the identity of the party accessing the personal information, the record accessed, and the time and date of access, and the type of permissible use"; and (3) "[e]xcept as authorized by law . . . , any person who reveals to any unauthorized person information contained in a computer database or who uses or permits the unauthorized use or access of any computer database is guilty of a misdemeanor." Doc. 189, Ex. 8. Whether ChoicePoint was the source of any information contained in the Accurint reports obtained by Neil Sankey is unclear.

      To establish a link between ChoicePoint and LRD, Plaintiffs have submitted a Securities and Exchange Commission Form 8–K, which describes the 2008 acquisition of ChoicePoint by Reed Elsevier. Doc. 189, Ex. 9. As revealed in the Form 8–K, both ChoicePoint and the LexisNexis Group[2] (of which LRD is a part) were divisions of Reed Elsevier after September 19, 2008. The Form 8–K also reveals that, following completion of the ChoicePoint merger, several executive-level officers in the LexisNexis Risk & Information Analytics Group for the LexisNexis Group, which ran the Accurint program, assumed comparable positions in the surviving ChoicePoint division of Reed Elsevier. Plaintiffs suggest that,

---

[2] Reed Elsevier acquired the LexisNexis Group some years earlier.

given the overlapping relationship between ChoicePoint and the LexisNexis Group, ChoicePoint must have been the source from which LRD obtained the Plaintiffs' private address that appeared in the Accurint reports acquired by Neil Sankey.

B.

Plaintiffs originally filed this suit in the Eastern District of Pennsylvania, asserting claims against IRB, LRD, Neil and Todd Sankey, and the Sankey Firm for violations of the DPPA, for defamation, defamation by innuendo, invasion of privacy, and gross or willful negligence, and for violations of the California Information Practices Act.  Before the case was transferred to this court, the United States District Court for the Eastern District of Pennsylvania dismissed all claims against LRD, Neil and Todd Sankey, and the Sankey Firm based on the doctrine of *res judicata*.  *Ostella v. IRBSearch, LLC*, Civil Action No. 12–7002, 2013 WL 5777291, at \*16 (E.D. Pa. 2013).  The Eastern District Court determined that Plaintiffs' claims against LRD, Neil and Todd Sankey, and the Sankey Firm were subject to claim preclusion based on the final judgment entered by the United States District Court for the Central District of California on similar claims asserted by Plaintiffs in a 2009 case against the same defendants.  *Id.* at \*4–7, 10.  IRB, which was not a party to the California case, was left as the only remaining

defendant in the Pennsylvania case. On August 5, 2014, the Pennsylvania District Court exercised its discretion under 28 U.S.C. § 1404(a) and transferred the case to this court. This court has since dismissed all claims against IRB except the DPPA claim that is now the subject of IRB's motion for summary judgment. Doc. 105.

## II.

In general, the DPPA prohibits state motor vehicle departments from disclosing or making available "personal information" drawn from motor vehicle records. 18 U.S.C. § 2721(a). "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." *Id.* § 2725(3).

Both mandatory and permissive exceptions to this general prohibition are set forth in § 2721(b). Subsection (b) first provides that state motor vehicle departments *must* disclose personal information for use in carrying out the purposes of several federal statutes not relevant here. Subsection (b) next provides that state motor vehicle departments *may* disclose personal information for any of the fourteen permissible uses listed in § 2721(b)(1)–(14). For eleven of the permissible uses, personal information may be disclosed without the consent of the person to whom the information pertains. *Id.* § 2721 (b)(1)–(10), (14). No

consent is required, for example, if the disclosure is "[f]or use by any licensed private investigative agency . . . for any purpose permitted under this subsection," *id.* § 2721(b)(8), or "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court . . . , including investigation in anticipation of litigation. . . ." *Id.* § 2721(b)(4).

The DPPA applies not only to state motor vehicle departments. The statute also makes it unlawful for "any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of [Title 18]." *Id.* § 2722(a). A person who knowingly violates the DPPA is subject to a criminal fine, *id.* § 2723(a), and may be held civilly liable for actual damages (but not less than $2,500 in liquidated damages), punitive damages, attorney fees, and appropriate equitable relief. *Id.* § 2724. A "person" is defined as an "individual, organization or entity, but does not include a State or agency thereof." *Id.* § 2725(2).

The DPPA also regulates the "resale or redisclosure" of personal information. In § 2721(c), the statute provides, in pertinent part: "An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection [2721(b)]." The term "authorized recipient" is not defined in the statute.

III.

A.

IRB is a reseller of information. It is undisputed that the DPPA authorizes the resale and redisclosure of personal information drawn from motor vehicle records. It is also undisputed that resellers are not themselves required to have a permissible use before they may purchase personal information, in bulk, directly from the state departments of motor vehicles for the sole purpose of reselling that information. A number of courts have so held. *See, e.g., Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 293 (6th Cir. 2012) (holding that "obtaining personal information solely for the purpose of reselling such information is permitted under the DPPA, so long as the personal information will ultimately be used only for purposes permitted under Section 2721(b)"); *Cook v. ACS State & Local Sols. Inc.*, 663 F.3d 989, 997 (8th Cir. 2011) (noting that "Section 2721(c) explicitly permits the resale of drivers' information, and it does not require that resellers must first use the information themselves"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 338 (5th Cir. 2010) (holding that "the only reasonable construction of 'authorized recipient' requires no actual use"); *Young v. West Publ'g Co.*, 724 F. Supp. 2d 1268, 1271 (S.D. Fla. 2010) (finding that the DPPA "does not require an independent permissible use for the entity that receives the information in order to qualify as an

'authorized recipient' [under § 2721(c)]").

Here, Plaintiffs contend that, because IRB did not obtain their private address directly from New Mexico's Department of Motor Vehicles, IRB is not an "authorized recipient" for purposes of the DPPA's reseller provision.[3] Without "authorized recipient" status, IRB must—according to Plaintiffs—have its own "permissible use" for any personal information that it obtains for resale. It is undisputed that IRB had no such "permissible use." Plaintiffs accordingly claim that IRB violated the DPPA when it obtained Plaintiff's private address from LRD.

In *Johnson v. West Publ'g Co.*, 504 F. App'x 531, 537 (8th Cir. 2013), the Eighth Circuit rejected the very argument that Plaintiffs make here. Relying on the circuit's prior binding precedent, *Cook v. ACS State & Local Sols., Inc.*, 663 F.3d 989 (8th Cir. 2011), the *Johnson* court concluded that the DPPA does not require a reseller of personal information drawn from motor vehicle records to have its own "permissible use" for the information.[4] Unlike in *Cook*, where the reseller acquired

---

[3] Curiously, in their response to IRB's summary judgment motion, Plaintiffs assert that, '[i]n this instance, [LRD] is the 'authorized recipient,' whose obtainment is protected by the reseller provision." Doc. 184 at p. 22. Plaintiffs have alleged, however, that neither IRB nor LRD (a LexisNexis division) obtained information directly from the State of New Mexico. According to Plaintiffs, the State of New Mexico instead had valid reseller contracts with other companies, one such company being ChoicePoint.

[4] The plaintiffs in *Cook* argued—without success—that the phrase "authorized recipient" under § 2721(c) means "an individual or entity who has an

its information directly from a state motor vehicle department, the reseller in *Johnson* acquired its database of motor vehicle records both from the states *and* from other entities that themselves acquired the information from state motor vehicle departments. The *Johnson* court rejected Johnson's attempt to distinguish *Cook* based on the reseller's source of information, stating:

> Nor do we agree with Johnson that *Cook* is distinguishable from the present case because *Cook* involved the bulk obtainment of personal information directly from the state, as opposed to the state and other entities. First, *Cook*'s holdings were not premised on where the reseller first obtained the information. Second, *Graczyk*—which we relied on in *Cook*—involved a complaint that is virtually identical to the present complaint. The *Graczyk* complaint alleged, among other things, "that West Publishing acquires the personal information contained in motor vehicle records of millions of drivers from state DMVs (*or from entities that have acquired the information from state DMVs* ) for resale in violation of the DPPA."  660 F.3d at 276 (emphasis added).  Id. . . . Because the complaint alleged that West acquired its database of motor vehicle records both directly from the states and from other entities "that have acquired the information from state DMVs," *id.*, the Seventh Circuit's holding was not restricted to the reseller obtaining the information only directly from the states.

*Johnson*, 504 F. App'x at 537; *see also Cook*, 663 F.3d at 996 ("So long as personal information is ultimately used only for permitted purposes, it is not clear why Congress would have intended to regulate *who* could obtain it.  The statute as

---

immediate permissible use for the information under section 2721(b)." 663 F.3d at 996.  The court found nothing in either the language of the statute or the legislative history to suggest that an "authorized recipient" must have a "permissible use" before selling information to third parties.

a whole is concerned only with the use of the information, not the entity requesting it." (emphasis in original)).

Like the Eighth Circuit, this court concludes that the meaning of the phrase "authorized recipient" does not turn on the source of the reseller's DPPA-protected information. As a reseller of information obtained from LRD, IRB was an "authorized recipient" entitled to obtain DPPA-protected information without having its own "permissible use." IRB is accordingly entitled to summary judgment on Plaintiffs' improper *obtainment* claim.

B.

In their response to IRB's motion for summary judgment, Plaintiffs state: "IRB violated the DPPA when it obtained Plaintiffs' unpublished address without having *its own* permissible use under the DPPA. Thus, the most relevant transaction in this action is the first one between IRB and [LRD]—not the second transaction (between IRB and Neil Sankey)." Doc. 184 at p. 1. Perhaps because they consider the second transaction less relevant, Plaintiffs devote little attention in their summary judgment response to their claim that IRB violated the DPPA by improperly *disclosing* DPPA-protected information to Neil Sankey, a private investigator. Indeed, they have failed to point to any evidence in the record from which this court—or a jury—could conclude that IRB violated the DPPA by

disclosing—through an Accurint search—Plaintiffs' address to Neil Sankey.

The DPPA imposes liability on a "person who *knowingly* . . . discloses . . . personal information from a motor vehicle record, for a purpose not permitted under [the DPPA]." 18 U.S.C. § 2724(a)(1) (emphasis added). Courts have reached differing conclusions regarding the scope of § 2724(a)(1)'s mental state requirement. For example, in *Gordon v. Softech Int'l, Inc.*, 726 F.3d 42 (7th Cir. 2013), the Seventh Circuit concluded that a reseller is liable under the DPPA "when it fails to use reasonable care to ensure that personal information is being obtained for a permissible purpose." *Id.* at 55. In contrast, district courts in Minnesota and the Middle District of Florida have rejected *Gordon's* interpretation and have concluded that the plain language of § 2724(a)(1) is not compatible with a negligence or duty-of-reasonable-care standard. *See, e.g., Ela v. Orange Cty. Sheriff's Office*, No. 6:13–cv–491–Orl–28KRS, 2014 WL 325697, at *3 (M.D. Fla. Jan. 29, 2014) (stating that the DPPA "does not establish a private cause of action for negligence"); *Ray v. Anoka Cty.*, 24 F. Supp. 3d 843, 848 (D. Minn. June 4, 2014) (stating that "the DPPA does not permit claims for the negligent disclosure of personal information"). Here, Plaintiffs' unlawful- disclosure claim falls short whether this court adopts the *Gordon* or the *Ela/Ray* interpretation of § 2724(a)(1).

Plaintiffs base their improper-disclosure claim on Neil Sankey's ultimate

disclosure of Plaintiffs' personal information to Orly Taitz, a lawyer who thereafter used the information to Plaintiffs' detriment. Even if the court *assumes* that Sankey had no permissible purpose for obtaining Plaintiffs' personal information from IRB, the court cannot make the leap from that assumption to a conclusion that IRB violated the DPPA when it allowed Sankey to access IRBsearch Services. Plaintiffs have produced no evidence to suggest that IRB itself acted with an impermissible purpose, or that IRB *knew* that Neil Sankey accessed the information without a permissible purpose, or that IRB failed to exercise reasonable care to prevent improper disclosure of DPPA-protected information to Neil Sankey.

The record reflects that IRB has a credentialing process that is designed, among other things, to avoid the misuse of DPPA-protected information by its customers. Among other things, IRB routinely investigates each prospective customer to ensure that the customer is a bona fide business entity in good standing, has all the required licenses, has an appropriate permissible purpose for accessing DPPA information, and will access DPPA information only for such permissible purpose. Doc. 196. IRB also maintains an audit program "designed to monitor the usage of customers to reasonably prevent and detect unauthorized use of LexisNexis systems or information." *Id.* As to the Sankey Firm itself, Todd

Sankey signed a written agreement with IRB, *certifying* and *warranting* that Firm members would use DPPA-protected information only for one of three specified permissible purposes. Doc. 189, Ex. 12. The Sankey/IRB agreement also included a warning that Sankey's use of IRBsearch Services would be subject to periodic reviews and audits and that any violations discovered would be subject to "immediate action including, but not limited to, suspension or termination of the license to use IRBsearch Services, reactivation fees, legal action, and/or referral to federal or state regulatory agencies." *Id.* While misuse of DPPA-protected information was not rendered impossible under the circumstances, it cannot be said—on this record—that IRB failed to exercise reasonable care to avoid disclosure of protected information to someone who had no permissible purpose.

## IV.

For the reasons explained above, the court finds that IRB is entitled to summary judgment. Accordingly, it is ORDERED:

1. IRB's motion for summary judgment (doc. 169) is GRANTED.

2. IRB'S request for oral argument (doc. 203) is DENIED.

3. The clerk shall enter judgment stating: "Summary judgment is entered in favor of the defendant, IRBsearch, LLC, and against Plaintiffs, Lisa Liberi and Brent Liberi. The claims of Lisa Ostella, Frank M. Ostella, and Philip J. Berg were

previously dismissed pursuant to stipulation."

    4. Costs shall be taxed against Lisa Liberi and Brent Liberi.

DONE AND ORDERED this ___4th___ day of ___December___, 2015.


                      s/ William Stafford
                      WILLIAM STAFFORD
                      SENIOR UNITED STATES DISTRICT JUDGE